IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PARIS TAYLOR, <br> #N-64077 <br><br> Plaintiff, <br><br> v. <br><br> RYAN SUTTERER, <br> MOHAMMED SIDDIQUI, <br> WEXFORD HEALTH SOURCES, INC., <br> and <br> FRANK LAWRENCE, <br><br> Defendants. | Case No. 19-cv-00044-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a motion for summary judgment filed by Defendant Dr. Mohammed Siddiqui. (Doc. 38).[1] Dr. Siddiqui argues that Plaintiff Paris Taylor, an inmate of the Illinois Department of Corrections, failed to exhaust his administrative remedies against him prior to filing suit as required. Taylor filed a response in opposition on August 26, 2019. (Doc. 40).

## BACKGROUND

On January 15, 2019, Taylor filed his Complaint for the deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. Taylor alleges that he suffers from chronic visions problems and received surgery for a retinal detachment in his left eye in March of 2014. (Doc. 8, p. 2). He was supposed to have a second follow-up surgery to insert a

---

[1] The Court recognizes that Defendant Dr. Siddiqui has not raised Taylor's failure to exhaust administrative remedies as an affirmative defense in his answer to the Amended Complaint. (*See* Doc. 54). To the extent, however, that Dr. Siddiqui's motion for summary judgment was not withdrawn and still pending and to resolve any issues of exhaustion that are not mooted, the Court issues this Order.

permanent contact lens in his left eye, but before the surgery was performed, he was transferred to Menard Correctional Center. (*Id.*). Taylor repeatedly reported that he still needed surgery, his vision was deteriorating, and he was experiencing severe headaches and dizziness, but his requests for treatment were denied. In an amended complaint (Doc. 49), Taylor further claims that in May 2018 he was sent to an ophthalmologist, who determined that he had pressure in his right eye and recommended surgery. (*See* Doc. 48, p. 2). He ultimately did have surgery, but because of the delay, Taylor suffered severe headaches, blurry vision, and his daily activities were affected. (*Id.* at p. 2-3). Taylor also claims that he needs new eyeglasses. Following a review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, Taylor was allowed to proceed with the following claims:

> **Count 1:** Eighth Amendment claim against Sutterer and Siddiqui for exhibiting deliberate indifference to Taylor's chronic vision problems.
>
> **Count 2:** Eighth Amendment claim against Wexford for deliberate indifference to a serious medical need based on its policy and/or custom of delaying and denying medical care to reduce costs at the expense of the health of inmates which resulted in the denial and delay of treatment for Taylor's chronic vision problems.

The Court dismissed Taylor's claim regarding the denial of appropriate eyeglasses because it was not asserted against a named defendant. (*Id.* at p. 4).

In his motion for summary judgment, Dr. Siddiqui identifies two grievances filed by Taylor in which he names Dr. Siddiqui concerning medical treatment for his vision and his severe and worsening symptoms. These grievances are dated February 8, 2018, and June 18, 2018. (Doc. 39, p. 2-3; *see also* Doc. 1-1, p. 7; Doc. 1-2, p. 12; Doc. 39-1, p. 39). Taylor's emergency grievance filed on February 8, 2018, alleges that he spoke with Dr. Siddiqui in January 2018 regarding his vision loss and surgeries, as well as his symptoms of severe pain, headaches, and dizziness. The chief administrative officer determined that the grievance was not an

emergency. Taylor was directed to resubmit the grievance in the normal process, but he did not file the grievance through the standard grievance process. He submitted the grievance to the administrative review board, who returned the grievance directing him to provide responses from the counselor, the grievance officer, and the chief administrative officer—which are obtained by following normal grievance procedures. (Doc. 39, p. 2; Doc. 39-1, p. 38). Taylor then filed another grievance on June 18, 2018. This grievance contains allegations regarding "on going pain in both of [his] eyes" (Doc. 1-2, p. 12), and claims that Taylor had a conversation with Dr. Siddiqui in June 2018 about the constant aches in his eyes. (*Id.* at p. 13). The chief administrative officer determined that the June 18, 2018 grievance was an emergency, and the grievance officer later determined that the grievance was moot. Taylor appealed the ruling, and the administrative review board denied the grievance as appropriately addressed. (Doc. 39, p. 3; Doc. 1-2, p. 15).

Dr. Siddiqui argues that the February 8, 2018 grievance does not comply with Menard's standard grievance process or the Illinois regulations because Taylor failed to resubmit his grievance through the normal procedures after it was determined to not be an emergency. (Doc. 39, p. 6). Furthermore, although the June 18, 2018 grievance follows Illinois regulations regarding grievance procedure, Dr. Siddiqui claims that this grievance is immaterial because the allegations regarding the conversation in June 2018 are outside the scope of this lawsuit, which only complains of deliberate indifference resulting from the January conversation with Dr. Siddiqui. (Doc. 39, pp. 3, 7). For these reasons, Dr. Siddiqui states that Taylor has failed to properly exhaust his administrative remedies against him.

Taylor does not dispute Defendant Dr. Siddiqui's allegations, but instead argues that he has exhausted his administrative remedies against Dr. Siddiqui by filing an emergency grievance dated June 5, 2018. (Doc. 40, p. 2). In this grievance, Taylor alleges that he has

consistently informed Dr. Sutterer of his headaches and vision problems and that Wexford Healthcare Staff have failed to arrange an appointment for him to see an outside ophthalmologist for surgery in order to reduce the fluid in his eye. (*Id.* at p. 5-6). Taylor states that this grievance adequately notified Dr. Siddiqui of the grievance because the grievance officer reported that the health care unit was contacted and "Dr. Siddiqui reviewed offender's grievance and offender's progress notes were reviewed from his last visit at Quantum Vision." (Doc. 40, pp. 3, 7).

## LEGAL STANDARDS

### *I. Summary Judgment*

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court considers the facts in a light most favorable to the non-moving party, here, Taylor. *Srail v. Vill. Of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

### *II. PLRA's Exhaustion Requirement*

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until *such administrative remedies as are available are exhausted*." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v.*

*Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809 (citing *Pozo,* 286 F.3d at 1025).

*III. Illinois Exhaustion Requirements*

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court turns to Illinois law for the procedures relevant to the instant motion. *See Jones v. Bock,* 549 U.S. 199, 218 (2007). As an inmate confined within the Illinois Department of Corrections, Taylor was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 ILL. ADMIN. CODE § 504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 ILL. ADMIN. CODE § 504.820(a). The

grievance officer will review the grievance and provide a written response to the inmate. 20 ILL. ADMIN. CODE § 504.830(a), (e). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id*.

If the inmate is not satisfied with the chief administrative officer's response, he or she can file an appeal with the director through the administrative review board ("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the grievance officer's report and the chief administrative officer's decision to his appeal. *Id*. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the chief administrative officer ("CAO") who may "[determine] that there is a substantial risk of

imminent personal injury or other serious or irreparable harm to the offender," and thus, the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## ANALYSIS[2]

Although the Court finds that Taylor failed to exhaust his administrative remedies by filing the emergency grievance on February 8, 2018, *see Smith v. Asselmeier,* 762 F. App'x 342, 343 (7th Cir. 2019), it does not consider Dr. Siddiqui's argument that the June 18, 2018 grievance is outside the scope of this lawsuit persuasive. The Court previously found that the additional allegations regarding medical treatment in May and June 2018, as claimed in the Amended Complaint, "sufficient to proceed against Defendants Sutterer, Siddiqui, and Wexford on Plaintiff's deliberate indifference claim[.]" (Doc. 48, p. 4). In the Amended Complaint, Taylor included allegations regarding "Defendants" conduct and their continuing failure to schedule emergency eye surgery and to provide him treatment. (Doc. 49). He references and attaches his June 18, 2018 grievance to the Amended Complaint, in which he states he spoke to Dr. Siddiqui in June 2018 regarding his lack of treatment and

---

[2] After review of the parties' briefs, the Court has determined that an evidentiary hearing pursuant to *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008), is not necessary.

symptoms. (Doc. 49, pp. 10, 42). In the grievance Taylor complains of problems with his left eye and references the pressure and the need for surgery to remove the pressure from his eyes. (Doc. 1-2, p. 13).

Construing the Amended Complaint liberally in light of Taylor's *pro se* status, the Amended Complaint alleges conduct of a continuing nature by Dr. Siddiqui that began in January 2018 and continued through June 2018. (*See* Doc. 49, p. 11) (alleging that "defendants have consistently given treatment that they know to be ineffective). As such, Taylor could have filed a grievance at any time, as long as the violation continued. *See Arnold v. Butler*, 17-cv-79, 2018 WL 966540 at *3 (S.D. Ill, Feb, 20, 2018). Dr. Siddiqui does not argue that the June 18, 2018 grievance fails to follow procedure, only that it is outside the scope of the claims in this suit. As the Court finds that the Amended Complaint alleges a continuing failure by Dr. Siddiqui to adequately address Taylor's vision problems, not limited to January 2018, the June 18, 2018 grievance served its function of giving "prison officials a fair opportunity to address [Taylor's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). *See also Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013).

Furthermore Dr. Siddiqui does not dispute Taylor's claim that he fully exhausted his claims by filing the June 5, 2018 emergency grievance. In that grievance, Taylor writes that "Wexford Staff" was aware that he needed emergency eye surgery, and that he has been misdiagnosed as not needing surgery. (Doc. 40, p. 6). The CAO determined that the grievance was an emergency and, after contacting Dr. Sutterer and Dr. Siddiqui, determined that the grievance was moot. (*Id.* at p. 7). Taylor appealed to the ARB, who denied the grievance as appropriately addressed. (*Id.* at p. 8). Although Dr. Siddiqui is not named, this grievance also provided notice that Taylor was not receiving appropriate care for his eyes by Wexford Staff, which includes Dr. Siddiqui, and afforded Dr. Siddiqui an opportunity to correct problems

with Taylor's medical care. *See Westerfer v. Snyder,* 422 F.3d 570, 580 (7th Cir. 2005) (all the PLRA requires is to "alert[] the prison to the nature of the wrong for which redress is sought[.]") (quoting *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002)).

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Dr. Siddiqui (Doc. 38) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** March 9, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**